United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN MUNSON, | Case No.  25-cv-06789-AMO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY ACTION** |
| HUNGRY MARKETPLACE, INC., et al., | Re: Dkt. No. 16 |
| Defendants. | |

This is a wage, hour, and discrimination action.  Before the Court is Defendants Hungry Marketplace, Inc. and Naturebox, Inc.'s motion to compel arbitration and stay proceedings. Having read the parties' papers and carefully considered their arguments therein, as well as the relevant legal authority, the Court **GRANTS** the motion for the following reasons.

## I.     BACKGROUND

Nathan Munson worked for Hungry Marketplace from 2022 to 2025.  Dkt. No. 16-2 ("Grass Decl.") ¶ 3.  Naturebox is a wholly owned subsidiary of Hungry Marketplace.  *Id.* ¶ 1. According to Munson's complaint, Hungry Marketplace provides catering services and event solutions in twelve U.S. cities, while Naturebox makes and delivers healthy snacks to businesses and homes across the contiguous United States.  Dkt. No. 1-2 ¶¶ 4-5.

Munson alleges he was always a Hungry Marketplace employee, while Defendants contend he started as an independent contractor and later transitioned to be an employee.  *Id.* ¶ 14; Grass Decl. ¶ 3.  Munson started working for Hungry Marketplace on September 20, 2022.  Grass Decl. ¶ 3.  Defendants contend that Munson signed a "Hungry Marketplace Inc Consulting Agreement" on September 20, 2022.  *Id.* ¶¶ 4-6; Dkt. No. 16-3.  That agreement contained an

arbitration provision. Dkt. No. 16-3 ¶¶ 24-24.5. Defendants additionally assert that, on the same day, Munson signed a separate Dispute Resolution Agreement concerning arbitration. Grass Decl. ¶ 8; Dkt. No. 16-4. According to Defendants, this second agreement was inadvertently uploaded for Munson's signature, as it was only intended to apply to Hungry Marketplace employees. Grass Decl. ¶ 8. The arbitration provisions in the two agreements differ. The most salient distinction is that the Consulting Agreement splits arbitration fees between the parties, while the Dispute Resolution Agreement requires Hungry Marketplace to bear all arbitration fees in California. *Compare* Dkt. No. 16-3 ¶ 24.4, *with* Dkt. No. 16-4 at 4.[1]

Munson was later hired as a Hungry Marketplace employee on January 20, 2023. Grass Decl. ¶ 10. Defendants assert that on January 23, 2023, Munson signed a Dispute Resolution Agreement concerning arbitration. *Id.* ¶¶ 11-13; Dkt. Nos. 16-5, 16-6. Except for the removal of an opt-out provision and the addition of an electronic signature provision, this agreement was substantively identical to the first Dispute Resolution Agreement. *Compare* Dkt. No. 16-4, *with* Dkt. No. 16-5.

Munson's lawsuit alleges various wage and hour violations, some derived from his alleged misclassification as an independent contractor, in addition to disability discrimination, retaliation, breach of contract, and tort claims. Dkt. No. 1-2.

II. **DISCUSSION**

A. **Applicable Law**

As an initial matter, the Federal Arbitration Act ("FAA") governs this motion. The FAA applies to any arbitration agreement "evidencing a transaction involving commerce," which expansively covers any transaction that Congress can regulate under the Commerce Clause. 9 U.S.C. § 2; *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-82 (1995). According to Munson's allegations, Defendants provide catering, event, and food delivery services across the United States. Dkt. No. 1-2 ¶¶ 4-5. Munson's work was part of Defendants' interstate commerce. *See* Dkt. No. 22-1 ¶¶ 6, 10; *Allied-Bruce*, 513 U.S. at 282; *Citizens Bank v. Alafabco, Inc.*, 539

---

[1] All citations to page numbers in filings on the docket refer to ECF pagination.

United States District Court
Northern District of California

U.S. 52, 57 (2003).  Though Munson analogizes this case to *Hoover v. Am. Income Life Ins. Co.*, 206 Cal. App. 4th 1193, 1207 (2012), his own statements demonstrate his participation in interstate commerce, unlike the extremely bare-bones evidence there.  Additionally, each of the arbitration agreements at issue expressly refer to the FAA.  Dkt. No. 16-3 ¶ 24.1 ("pursuant to the Federal Arbitration Act"); Dkt. No. 16-4 at 3 ("[T]his Agreement is governed by the Federal Arbitration Act . . . ."); Dkt. No. 16-5 at 3 (same).  The plain language of these agreements would also require applying the FAA.  *See Biller v. Toyota Motor Corp.*, 668 F.3d 655, 662-63 (9th Cir. 2012).

The FAA's transportation worker exemption does not apply to Munson.  This exemption requires considering (1) the class of workers that a plaintiff belongs to; and (2) whether that class of workers plays a "direct and necessary" role in interstate commerce while being "'actively engaged' and 'intimately involved with' transportation" of goods.  *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1161-62 (9th Cir. 2024) (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)).  The party opposing arbitration bears the burden of showing the exemption applies.  *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024).  At the first step, Munson has not attempted to explain what class of workers he belongs to.  At the second step, Munson describes, among other duties, delivering food "shipped in from vendors such as Costco, Sam's Club, and other suppliers."  Dkt. No. 22-1 ¶ 6.  Even if that shows that Munson sometimes transported goods that were shipped in interstate commerce, *see Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 864 (9th Cir. 2021) (Uber drivers, who sometimes perform interstate trips, were not exempted transportation workers), Munson would have been an "unaffiliated, independent participant[]" in transporting the food bought from third-party suppliers "rather than an integral part of a single, unbroken stream of interstate commerce."  *See id.* at 867 (citation omitted).  If transporting goods bought from third-party suppliers alone was enough to apply the transportation worker exemption, this narrowly construed exemption would swallow the FAA's general rule.  *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

Since the FAA applies, this Court's role is limited to certain gateway issues.  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022).  The parties can delegate some of

3

these gateway issues to an arbitrator. *Id.* If they do so, a court's role is only to determine (1) if an agreement to arbitrate was formed; and (2) if the delegation clause is enforceable. *Id.* at 1030.

### B.    Formation of Arbitration Agreements

Because Munson denies signing the arbitration agreements, California law requires Hungry Marketplace to show by a preponderance of the evidence that Munson signed the documents. *See Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). Electronic signatures are sufficient so long as the defendant shows it was "the act of the person"; the burden to make that showing is "not great." Cal. Civ. Code § 1633.9(a); *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844-45 (2014). Though whether Defendants have met their burden of proof is a question of state law, the admissibility of evidence on this question is governed by the Federal Rules of Evidence. *See Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995) (holding the Federal Rules of Evidence govern diversity cases unless a state evidence rule has substantive effect).

Defendants have met their burden of proof to show that Munson signed all three relevant agreements. Starting with the first two agreements, Hungry Marketplace CEO Jeff Grass explained that Hungry Marketplace "upload[ed] documents . . . through the HelloSign electronic signature portal (now known as Dropbox Sign), which is then accessed by the consultant through a link in an email that is sent directly to their email address." Grass Decl. ¶¶ 5-6, 8. The HelloSign audit trails indicate that both documents were sent to a Yahoo email address starting with "n" and signed on September 20, 2022. Dkt. No. 16-3 at 13; Dkt. No. 16-4 at 6. As to the final agreement, Grass similarly explained that as part of employee onboarding, Hungry Marketplace "will upload documents, including a dispute resolution agreement through the ADP onboarding electronic signature portal, which is then accessed by the employee through a link in an email that is sent directly to their email address." Grass Decl. ¶ 12-13. The ADP document audit history indicates that a user named "NMUNSON11" signed this final agreement on January 23, 2023. Dkt. No. 16-6 at 2. This evidence is sufficient to meet Defendants' burden of proof. *See Ugalde v. Syngenta Flowers, LLC*, No. 24-CV-07568-EKL, 2025 WL 1828513, at *3 (N.D. Cal. July 1, 2025) (citing *Ruiz*, 232 Cal. App. 4th at 844). While Munson attests that he has no recollection of signing any

United States District Court
Northern District of California

of these documents, "courts have consistently rejected the notion that an employee's failure to recall signing an agreement establishes lack of an agreement." *See Gonzalez v. Peak Cal. Rest. Grp., LLC*, No. 25-CV-04068-AMO, 2026 WL 765325, at *3 (N.D. Cal. Mar. 18, 2026) (citations omitted); Dkt. No. 22-1 ¶¶ 3, 11.

Munson raises several objections to Defendants' proffered evidence, each of which is overruled. First, Munson contends that Grass lacked personal knowledge to declare whether Munson signed the agreements. However, "[a]n individual's job duties can establish sufficient knowledge for authenticating an agreement." *Gonzalez*, 2026 WL 765325, at *2 (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)). Grass's position, as well as his regular access of Defendants' records and knowledge of their document signing practices, provides a sufficient foundation for his declaration. *See id.*; Grass Decl. ¶¶ 2, 4-8, 11-14. Second, to the extent Munson asserts that Grass's declaration is improper expert testimony, Grass merely expresses facts based on his own personal knowledge and opinions rationally based on that knowledge. *See Gonzalez*, 2026 WL 765325, at *3. Finally, Munson contends that the agreements themselves are hearsay, but contracts are excluded from the definition of hearsay. *See Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th Cir. 2000).

### C.      Enforceability of Delegation Clauses

Each of the arbitration agreements contains a delegation clause. *See* Dkt. No. 16-3 ¶ 24.1-24.2 (requiring arbitration of claims arising from "the negotiation, execution, interpretation, performance, breach or enforcement of this [Consulting] Agreement" and providing the arbitrator with "sole and exclusive authority to determine whether a dispute, claim or cause of action is subject to arbitration . . . and to determine any procedural questions which grow out of such disputes, claims or causes of action and bear on their final disposition"); Dkt. No. 16-4 at 4 ("The Arbitrator, and not any federal or state court, shall have the exclusive authority to resolve any issue relating to the interpretation, formation or enforceability of this Agreement, or any issue relating to whether a Claim is subject to arbitration under this Agreement . . . ."); Dkt. No. 16-5 at

United States District Court
Northern District of California

5

4 (same).[2]  Accordingly, so long as the delegation clauses are enforceable, the arbitrator must resolve any remaining questions about enforceability of the agreements.  *See Caremark*, 43 F.4th at 1029.

A delegation clause is unenforceable if it is unconscionable.  *See, e.g., Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1001 (9th Cir. 2023).  While this analysis is not "confined to the text of the delegation clause," a party challenging provisions outside of the delegation clause must "explain how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable."  *Id.* at 1002 (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010)).  Under California law, unconscionability requires "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, [and] the latter on overly harsh or one-sided results."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (quotations and citation omitted).  The two elements are evaluated on a sliding scale, so a stronger showing of one lessens the required showing of the other.  *Id.* (citation omitted).

### 1.    Procedural Unconscionability

The delegation clauses have a moderate degree of procedural unconscionability.  They were included in contracts of adhesion, but "adhesion alone generally indicates only a low degree of procedural unconscionability."  *See Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 494 (2024).  Nevertheless, "the potential for overreaching in the employment context warrants close scrutiny of the contract's terms."  *Id.*  Additionally, Munson entered into two agreements on September 20, 2022, and though both require arbitration of disputes, the two contain some conflicting terms.  For instance, as recounted above, the two agreements have different delegation clauses and a different allocation of arbitration fees between the parties.  It "would not be evident to anyone without legal knowledge or access to the relevant authorities" how to reconcile the two agreements.  *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129 (2019).

---

[2] Munson has not raised whether the delegation clauses are "clear and unmistakable" about delegating the question of enforceability to the arbitrator.  *See Rent-A-Center*, 561 U.S. at 69 n.1. Accordingly, to the extent that the Consulting Agreement's delegation clause is ambiguous, he has waived that argument.

6

United States District Court
Northern District of California

Munson asserts that several circumstances demonstrate a high degree of procedural unconscionability, *see id.* at 126-27, but none created extreme oppression or surprise. First, Munson declared that Defendants never told him he would be giving up the right to a jury trial, could negotiate the contracts, or could consult with an attorney. Dkt. No. 22-1 ¶¶ 4, 11. However, Munson does not contend that Defendants "exerted pressure on him, denied him sufficient time to consider the contract, or deprived him of the opportunity to review the contract with an attorney." *See Peloquin v. Tesla, Inc.*, No. 25-CV-06690-AMO, 2026 WL 497169, at *4 (N.D. Cal. Feb. 23, 2026). Additionally, Munson notes that the final Dispute Resolution Agreement provided for arbitration pursuant to the hyperlinked JAMS "Employment Arbitration Rules & Procedures then in effect," and those rules could subsequently change.[3] *See* Dkt. No. 16-5 at 3. But "this appears to be a common provision that does not render the agreement unconscionable." *See McKeown v. SAS Retail Servs., LLC*, No. 25-CV-03654-HSG, 2025 WL 3563717, at *4 (N.D. Cal. Dec. 12, 2025) (citing *Kittrell v. USA Debusk LLC*, No. 25-CV-02432-MMC, 2025 WL 3049883, at *8 (N.D. Cal. Oct. 31, 2025)).

### 2.    Substantive Unconscionability

Substantive unconscionability focuses on whether an agreement has terms that are "unreasonably favorable to the more powerful party." *Ramirez*, 16 Cal. 5th at 494 (citation omitted). Munson asserts several terms in the Consulting Agreement and the Dispute Resolution Agreement are substantively unconscionable.

Starting with the Consulting Agreement, Munson first contends that it misclassified him as an independent contractor, and that several non-arbitration provisions premised on his independent contractor status are unconscionable as applied to employees. But this would not have an impact on delegating arbitrability to the arbitrator, so it is not considered in analyzing unconscionability of the delegation clause. *See Holley-Gallegly*, 74 F.4th at 1002.

---

[3] Munson classifies this as an issue of substantive unconscionability, presumably following the court's lead in *Hasty v. Am. Auto. Assn.*, 98 Cal. App. 5th 1041, 1060-61 (2023). However, this issue seems more aptly classified as one of procedural unconscionability. *Cf. Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93, 107 (2026) ("An otherwise fair and mutual term is not made substantively unconscionable by printing it in a manner that makes it difficult to read . . . .").

United States District Court
Northern District of California

Second, the Consulting Agreement requires Munson and Hungry Marketplace to "equally share all arbitration fees." Dkt. No. 16-3 ¶ 24.4. This provision impacts delegation of arbitrability to the arbitrator. *See Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1003 (9th Cir. 2021). It is unconscionable to require an employee to "bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11. *Armendariz*'s requirements also apply to allegedly misclassified independent contractors. *Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462, 473 (2020). Accordingly, this provision is unconscionable. *See id.* at 479. Defendants' offer to waive it has no bearing on unconscionability. *See Armendariz*, 24 Cal. 4th at 125.

Finally, Munson contends that the Consulting Agreement has conflicting provisions as to whether disputes will be resolved by an arbitrator or by the courts. It first states that "[a]ny suit involving this Agreement shall be brought in a court sitting in California." Dkt. No. 16-3 ¶ 19. But it later provides that for specific categories of disputes, "both Consultant and Client waive the right to resolve any such disputes through a trial by jury or judge or through an administrative proceeding" and must instead arbitrate those disputes. *Id.* ¶ 24.1 (all-caps removed). These terms can be harmonized by interpreting paragraph 19 to require filing suit in a California court if arbitration is not required (such as if a party seeks interim injunctive relief). *See id.* ¶¶ 19, 24.1, 24.5. So these provisions are not substantively unconscionable.

Turning to the final Dispute Resolution Agreement, Munson first contends that its delegation of issues related to contract formation is unconscionable. While this provision would seem to prevent a court from determining whether an agreement to arbitrate was formed, parties cannot delegate that issue to an arbitrator. *See Caremark*, 43 F.4th at 1030. As a result, requiring Munson to arbitrate formation is unenforceable. *See id.*

Next, the Dispute Resolution Agreement provides that "no certification authority or other third party verification is necessary to validate your electronic signature and that the lack of such certification or third party verification will not in any way affect the enforceability of your electronic signature on the Agreement." Dkt. No. 16-5 at 5. Munson contends that this provision conflicts with California law regarding electronic signatures. As the enforceability of an

8

electronic signature can be shown in "any manner," there is no obvious conflict between this provision and California law. *See* Cal. Civ. Code § 1633.9(a). Thus, this provision does not appear to be unconscionable.

Finally, Munson points to the Dispute Resolution Agreement's third-party beneficiary provision. Dkt. No. 16-5 at 4. However, this provision is not relevant to the analysis as it does not impact delegating arbitrability to the arbitrator. *See Holley-Gallegly*, 74 F.4th at 1002.

### 3. Severability

"[C]ourts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; and enforcing the balance of the contract would be in the interests of justice." *Ramirez*, 16 Cal. 5th at 517. Severance is appropriate to remedy the delegation clauses' unconscionable terms. First, the delegation clause in each agreement has only one unconscionable provision, so neither clause is "'permeated' by unconscionability." *See Armendariz*, 24 Cal. 4th at 122. Further, those problematic provisions can be easily severed from their respective agreements. *See Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 255-56 (2016) (severing fee-splitting provision). And each agreement contains a severability provision. *See* Dkt. No. 16-3 ¶ 20; Dkt. No. 16-5 at 4. Accordingly, the Consulting Agreement's fee-splitting provision and the Dispute Resolution Agreement's delegation of formation issues are both severed from their respective agreements.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to compel arbitration and motion to stay. The arbitrator must address any remaining arguments about arbitrability. Given the procedural posture, the Court **ORDERS** that the instant case is **CLOSED** for statistical purposes only. Nothing contained in this Order shall be construed as a dismissal or disposition of the action, and should further proceedings become necessary herein, any party may initiate them in the same manner as if the case had not been closed. The parties **SHALL FILE** a joint status report on **September 1, 2026**, and every 90 days thereafter, to inform the Court of the status of the arbitration proceedings. Additionally, within 30 days of the resolution of the arbitration, the

parties **SHALL FILE** a joint status report and advise whether the case should be terminated and/or other actions which should be taken.

> **IT IS SO ORDERED.**

Dated: June 3, 2026

_____
ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

United States District Court
Northern District of California